UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| HEARTBRAND BEEF, INC., § <br> § <br> Plaintiff; § <br> § <br> v. § <br> § <br> LOBEL'S OF NEW YORK, LLC, § <br> WORLDWIDE MEDIA, INC., THOUGHT § <br> CONVERGENCE, INC. and YAHOO! § <br> INC.; § <br> § <br> Defendants. § | CIVIL ACTION NO. <br> 6:08-cv-00062 |

**WORLDWIDE MEDIA, INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION; OR, IN
THE ALTERNATIVE, MOTION TO DISMISS FOR
IMPROPER VENUE; OR, IN THE ALTERNATIVE,
<u>MOTION TO TRANSFER VENUE</u>**

Worldwide Media, Inc. ("Worldwide"), Defendant, files its Motion to Dismiss Plaintiff's suit for lack of personal jurisdiction; or, in the alternative, Motion to Dismiss for improper venue; or, in the alternative, Motion to Transfer venue as authorized by Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) and 28 U.S.C. § 1406(a).

### I. SUMMARY OF CASE

1. This Court lacks personal jurisdiction over Worldwide because it is not a resident of Texas, has not engaged in business in Texas, does not own property in Texas, has not committed any torts in Texas, does not have continuous or systematic contacts with Texas, and an exercise of jurisdiction over it would not comport with requirements of due process.

2385813.1

2. Furthermore, the Southern District of Texas is an improper venue for this action because a substantial part of the events or omissions giving rise to this lawsuit did not occur in this judicial district and no defendant is from the State of Texas.

## II. FACTUAL BACKGROUND

3. Heartbrand Beef, Inc. ("Heartbrand"), Plaintiff, sued Worldwide for false designation of origin under § 42(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition in the Southern District of Texas, Victoria Division.

4. The Amended Complaint bases jurisdiction on 15 U.S.C. § 1121, 15 U.S.C. § 1125(a) and 28 U.S.C. § 1339(a). *See* Compl. ¶ 6. The Amended Complaint alleges that Worldwide "has done business in the Western District of Texas" (*see id.* ¶7), but it does not allege what contacts, if any, Worldwide has or had with the state of Texas.

5. Worldwide is a company that owns domain names. Aff., ¶ 3. One of the domain names that it owns and has registered is www.akaushisteaks.com. *Id.*, ¶ 3. Worldwide did not create or develop the website for www.akaushisteaks.com, (*Id.*, ¶ 4), did not solicit advertisers for that website and did not sell any products on that website (*Id.*, ¶ 5). Worldwide is a corporation organized under the laws of the State of Florida, with its principal place of business located in Hillsboro Beach, Florida. *Id.*, ¶ 2. Worldwide has no registered agent in Texas (*Id.*, ¶ 8), no place of business in Texas (*Id.*, ¶ 8), no employees in Texas (*Id.*, ¶ 8), owns no real estate or personal property in Texas (*Id.*, ¶ 9), has no bank accounts in Texas (*Id.*, ¶ 10), no post office boxes in Texas (*Id.*, ¶ 10), no telephone listings in Texas (*Id.*, ¶ 10), has never negotiated or entered into a contract in Texas (*Id.*, ¶ 11), is not affiliated with any Texas companies (*Id.*, ¶ 12) and

2
2385813.1

does not maintain any records in Texas (*Id.*, ¶ 12). Worldwide is not licensed to do business in Texas as a foreign corporation, and it has never applied for a charter or license to do business in Texas. *Id.*, ¶ 13. Worldwide does not do business in the state of Texas. *Id.*, ¶ 14. Worldwide has no subsidiaries, parents or affiliates incorporated or qualified to do business in Texas. *Id.*, ¶ 15. Worldwide does not have ongoing sales or any other ongoing contacts with Texas. *Id.*, ¶ 16. Worldwide does not recruit Texas residents, directly or through an intermediary located in the State of Texas, for employment inside or outside the State of Texas. *Id.*, ¶ 17.

### III. LACK OF PERSONAL JURISDICTION

6. Once a defendant raises a lack of personal jurisdiction defense, the burden shifts to the plaintiff to make a *prima facie* showing that jurisdiction exists. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) ("Plaintiffs typically carry the burden of proof of personal jurisdiction by making a *prima facie* showing. The district court usually resolves the jurisdictional issue without conducting a hearing." (footnote omitted)); *Schindley v. Lituchy*, 2006 WL 2504953, at *4 (E.D. Tex. Aug. 28, 2006) (granting motion to dismiss complaint based on lack of personal jurisdiction) (citing *D.J. Inv. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). A plaintiff cannot rely on bare or conclusory pleadings to prove a *prima facie* case of jurisdiction; rather, it must offer evidence to support these allegations. *D/FW Plastics, Inc. v. Graham Partners, Inc.*, 2006 WL 3591741, *2 (N.D. Tex. Dec. 11, 2006) (granting motion to dismiss based on lack of personal jurisdiction); *McCarthy v. Honda Motor Co., Ltd.*, 1997 WL 769474, at *2 (N.D. Tex. Dec. 4, 1997).

7.      Accordingly, the Court must direct its inquiry to whether Worldwide's actions in Texas, if any, constitute sufficient minimum contacts with Texas so that permitting Heartbrand to maintain its lawsuit against Worldwide in Texas would comport with due process.

### A.    Worldwide Does Not Have Sufficient Minimum Contacts with Texas for this Court to Exercise Personal Jurisdiction.

8.      Pursuant to Federal Rule of Civil Procedure Rule 4(e), a federal court may exercise personal jurisdiction over a non-resident defendant if the defendant has committed acts that bring it within the forum state's long-arm statute and the exercise of such jurisdiction is consistent with due process under the United States Constitution. The long-arm statute in Texas expands as far as due process permits. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000), *cert. denied*, 531 U.S. 979 (2000). Therefore, the personal jurisdiction inquiry in Texas is simply a question of due process. *Id.*

9.      Where a defendant is not present in the forum state, as is the situation here, the due process inquiry is whether the defendant "entertains certain minimum contacts with the [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

10.     The Fifth Circuit has adopted the following three-pronged inquiry to determine whether the *International Shoe* test is satisfied:

> "(1) whether the defendant ... purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable."

*NewKnowledge Tech., LLC v. Baron Capital V, Inc.*, 2003 WL 23201333, at *2 (N.D. Tex. July 24, 2003) (quoting *Nuovo Pignone, SpA, v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002)).

11. The critical component of the due process analysis "is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A] defendant will not be haled into a jurisdiction solely as a result of '*random,*' '*fortuitous,*' *or* '*attenuated*' *contracts ... or of the* '*unilateral activity of another party* or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis added) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp.*, 444 U.S. at 299)).

12. The "minimum contacts" prong of the due process test is further divided into contacts that are either "general" or "specific." *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 324 (5th Cir. 1996); *see also Schindley*, 2006 WL 2504953, at *4. As discussed in greater detail below, this Court lacks both "general" and specific" jurisdiction over Worldwide.

13. Under a minimum-contacts analysis, the court must determine whether Worldwide has purposefully availed itself of the benefits and protections of Texas by

conducting activities within the forum state. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 109 (1987); *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818-19 (8th Cir. 1994). In measuring minimum contacts, the court should consider the following:

(1) the nature and quality of the contacts with the forum state,

(2) the quantity of the contacts,

(3) the relation of the cause of action to the contacts,

(4) the interest of the forum state in providing a forum for its residents, and

(5) the convenience of the parties. *Bell Paper Box*, 22 F.3d at 819. Minimum contacts are not established unless the court finds it has either specific or general jurisdiction over the defendant.

*See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 150-51 (3d Cir. 1996); *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993).

1. The Court Does Not Have General Jurisdiction Over Worldwide.

14. Worldwide has neither had "continuous and systematic" contacts with Texas, nor has it purposefully availed itself to the privileges of doing business in Texas.

15. Under certain circumstances, a state may exercise "general" jurisdiction over a non-resident defendant when the action does not arise out of, and is not related to, the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Such general jurisdiction, however, may only be exercised consistent with constitutional due process requirements, and only over defendants with "extensive, continuous and systematic" general business contacts with the forum state. *Id.* at 416-19 (finding no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas and sent pilots for training in Texas). "When general jurisdiction is asserted, the minimum

2385813.1

contacts analysis is more demanding and requires a showing of substantial activities within the forum state." *Computer City, Inc. v. Pro-C Ltd*, 2001 WL 406370, at *2 (N.D. Tex. April 17, 2001) (citation omitted); *Meadows v. Hartford Life Ins. Co.*, 2006 WL 2336913, at *3 (S.D. Tex. Aug. 10, 2006) (citations omitted) (holding that in order "to make a *prima facie* showing of general jurisdiction, the plaintiff must produce evidence that affirmatively shows that the defendant's contacts with the forum state that are unrelated to the litigation are sufficient to satisfy due process requirements.").

16. Here, it would violate due process for this Court to exercise "general jurisdiction" over Worldwide because its contacts with Texas are in no way extensive, continuous or systematic. *See Wilson*, 20 F.3d at 651.

17. Heartbrand's claim for jurisdiction is based solely upon a bare, conclusory and unsupportable allegation that Worldwide "has done business in the Western District of Texas." *See* Compl., ¶ 7. The Court should give no weight to Heartbrand's conclusory allegations. *See Compana*, 2004 WL at *3. ("Such conclusory allegations, unsupported by any facts, do not support the exercise of personal jurisdiction of a non-resident defendant." (citation omitted)).

18. As set forth above, Worldwide is a company that owns domain names. Aff., ¶ 3. One of these domain names that it owns and has registered is www.akaushisteaks.com. *Id.*, ¶ 3. Worldwide did not create or develop the website for www.akaushisteaks.com, (*Id.*, ¶ 4), did not solicit advertisers for that website and did not sell any products on that website (*Id.*, ¶ 5). Worldwide is a corporation organized under the laws of the State of Florida, with its principal place of business located in Hillsboro

7

Beach, Florida. *Id.*, ¶ 2. Worldwide has no registered agent in Texas (*Id.*, ¶ 8), no place of business in Texas (*Id.*, ¶ 8), no employees in Texas (*Id.*, ¶ 8), owns no real estate or personal property in Texas (*Id.*, ¶ 9), has no bank accounts in Texas (*Id.*, ¶ 10), no post office boxes in Texas (*Id.*, ¶ 10), no telephone listings in Texas (*Id.*, ¶ 10), has never negotiated or entered into a contract in Texas (*Id.*, ¶ 11), is not affiliated with any Texas companies (*Id.*, ¶ 12) and does not maintain any records in Texas (*Id.*, ¶ 12). Worldwide is not licensed to do business in Texas as a foreign corporation, and it has never applied for a charter or license to do business in Texas. *Id.*, ¶ 13. Worldwide does not do business in the state of Texas. *Id.*, ¶ 14. Worldwide has no subsidiaries, parents or affiliates incorporated or qualified to do business in Texas. *Id.*, ¶ 15. Worldwide does not have ongoing sales or any other ongoing contacts with Texas. *Id.*, ¶ 16. Worldwide does not recruit Texas residents, directly or through an intermediary located in the State of Texas, for employment inside or outside the State of Texas. *Id.*, ¶ 17.

19. Based on these facts, the court cannot exercise general jurisdiction over Worldwide because it has not had continuous and systematic contacts between it and Texas. *See Helicopteros*, 466 U.S. at 416. Heartbrand's allegation that Worldwide does business in Texas rests solely upon the fact that Worldwide owns the domain name www.akaushisteaks.com. This is not enough to support the exercise of general jurisdiction over Worldwide.

20. Worldwide has not purposefully availed itself of the forum of Texas, and could not have reasonably anticipated being haled into court to defend against an action seeking relief under the Lanham Act or a claim of common loss unfair competition. Simply put – and contrary to Heartbrand's allegation, Worldwide has not had systematic

8
2385813.1

and continuous contacts with Texas such that it could be said that it was "doing business" in this state. As such, the Court does not have general jurisdiction over it.

### 2. The Court Does Not Have Specific Jurisdiction Over Worldwide.

21. "Specific jurisdiction exists when the nonresident defendant has 'purposefully directed' its activities at the residents of the forum, and the litigation results from alleged injuries that 'arise from or relate to' those activities." *Burger King Corp.*, 471 U.S. at 474; *see also Felch*, 92 F.3d at 325-26 (quoting *Arkwright Mut. Ins. Co. v. Transportes de Nuevo Laredo S.A. de C.V.*, 879 F.Supp. 699, 700 (S.D. Tex. 1994)). "The casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." *Int'l Shoe*, 326 U.S. at 317 (citations omitted).

22. The court's "inquiry must focus on what *contacts* Worldwide had with Texas other than the alleged *effects* of that conduct claimed to have been felt in Texas by Plaintiff." *Meadows v. Hartford Life Ins. Co.*, 2006 WL 2336913, at * 5 (S.D. Tex. Aug. 10, 2006) (emphasis in original). Indeed, a court's jurisdiction hinges entirely on the Defendant's relationship to the alleged act in the forum state. *Felch*, 92 F.3d at 325 n. 12; *Ham*, 4 F.3d at 415-16 ("Purposeful forum-directed activity – even if only a single substantial act – may permit the exercise of specific jurisdiction in an action arising from or related to such acts." (citations omitted)). To exercise specific jurisdiction, a court must find that there was some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum, from which a cause of action arises. *See Hanson v. Denckla*, 357 U.S. 235, 251-53 (1958).

23.   Worldwide's only "contact" with Texas is owning a domain name that is accessible in Texas through a website that Worldwide did not create. The Fifth Circuit has not yet analyzed the effect of domain name ownership on specific jurisdiction.[1] Not surprisingly, the Ninth Circuit has reached this issue in a number of cases. That Court's analysis of this narrow factual circumstance rests directly upon the framework created by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).

24.   In *Calder*, Florida residents authored an article allegedly disparaging to California resident, Shirley Jones. Justice Rehnquist's opinion held that, while the nonresident defendants "do not in effect appoint the article their agent for service of process," where the intentional act of the nonresident defendant was directed at California, and caused harm felt primarily in California, personal jurisdiction in California was proper. *Id.* at 788-89. The key element in the Supreme Court's analysis was that a Defendant, like Worldwide, must direct an intentional act to the state where the lawsuit was filed. Since Worldwide merely owns the domain name www.akaushisteaks.com, it did not direct any intentional act to Texas.

25.   In *Pebble Beach Co. v. Caddy*, the Ninth Circuit applied what it calls "the *Calder* effects test" to a dispute involving a resident of Great Brittain who owned the domain name www.pebblebeach-uk.com. 453 F.3d 1151 (9th Cir. 2006). Pebble Beach Company, the owners of the well known Californian golf course, alleged that ownership

---

[1] Domain name ownership is different than operating or maintaining a website. With respect to website operation, the Fifth Circuit has adopted the analysis of the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997). *See Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *Mink v. AAAA Dev. LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). All three cases demonstrate that merely maintaining a website, when standing alone, is insufficient to establish personal jurisdiction over the nonresident owner. This simple precept – operation alone is not enough – informs the relevant analysis in this case and supports the conclusion that mere ownership of a domain name, when standing alone, is not enough to establish personal jurisdiction over a nonresident defendant.

of that domain name that infringed upon and diluted its own protectable mark, and established personal jurisdiction over the nonresident because, in an of itself, ownership of the domain name constituted expressly aiming tortious conduct at California. *Id.* at 1154. The Ninth Circuit disagreed. *Id.* at 1158. Applying *Calder*, the Court held that "something more than just a foreseeable effect" in California is required to establish specific jurisdiction from the ownership of a domain name. *Id.*

26. Just as in *Pebble Beach*, it would be improper for this Court to exercise personal jurisdiction over Worldwide solely because of ownership of a domain name. Heartbrand has alleged no specific acts directed toward, or even foreseeable effects upon the state of Texas. Instead, Heartbrand's sole contention concerns Worldwide's ownership of the domain name. Something more is required under both the Ninth Circuit's and Supreme Court's *Calder* analysis.

27. As an example of "something more," the *Pebble Beach* court cited to one of its earlier cases: *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998). *Pebble Beach Co.*, 453 F.3d at 1156-57. In *Panavision*, Toeppen, the nonresident defendant, registered Panavision's, a California resident, trademarks as domain names. *Panavision*, 141 F.3d at 1319. When Toeppen was notified by Panavision and warned to stop using the trademarks, Toeppen refused and offered instead to sell the trademarks for $13,000. *Id.* Relying on *Calder*, the Court said that "simply resgistering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a" nonresident defendant to personal jurisdiction without "something more." *Id.* at 1322. That "something more" was the demand for $13,000 and the evidence that

11

Toeppen engaged in a scheme to extort money from Panavision by registering its trademarks. *Id.*

28. That "something more" is not present in the current case before this Court. Instead, Worldwide simply owns a domain name. The analysis comparing this case to Pebble Beach is:

CALDER APPLIED TO DOMAIN NAMES

|  | *Pebble Beach* | This Case |
|---|---|---|
| Out of State Defendant | Yes | Yes |
| Domain Name owned | Yes | Yes |
| Website Operated by Defendant | Yes | No |
| Directed at Forum State | No | No |
| Personal Jurisdiction | No | This Court should find no personal jurisdiction. |

29. It is clear from the previous chart that Worldwide has done no act in Texas from which a cause of action arose that could lead to specific jurisdiction. There is no evidence in this case, and Heartbrand cannot offer any, to support such a finding. Following *Calder*, this court should rule that Worldwide has not designated its domain name as its agent for service of process in every venue in Texas, the United Sates and every nation. The *Calder* effects test requires an intentional act, directed at the forum state which causes harm to the forum state. *Calder*, 465 U.S. 788-89. Worldwide may own the domain name www.akaushisteaks.com, but there is no evidence whatsoever that there was "something more" constituting directed conduct by Worldwide toward Texas.

2385813.1

B. Forcing Worldwide to Litigate in Texas Violates Principles of Fair Play and Substantial Justice.

30. As set forth above, the third prong of the Fifth Circuit's due process test is whether the exercise of personal jurisdiction in Texas would comport with notions of fair play and substantial justice. *See Nuovo Pignone,* 310 F.3d 374 (5th Cir. 2002); see also *Burger King Corp.,* 471 U.S. at 476-77. This analysis requires the Court to evaluate the burden on Worldwide, the interest of the Texas as forum state, Heartbrand's interest in obtaining convenient and effective relief, and Texas' shared interest in efficiently resolving controversies and the furthering of substantial social policies. *See Asahi,* 480 U.S. at 112.

31. In view of the fact that Worldwide does not have "minimum contacts" with Texas, the Court does not need to conduct this analysis. *See Ham,* 4 F.3d at 416, fn. 15. However, even if we assumed, solely for the sake of argument, that Worldwide had sufficient minimum contacts with Texas – which it does not – the aforementioned factors of the "fairness" prong of the due process test still militate in Worldwide's favor.

32. First, Worldwide has neither "systematic and continuous" contacts nor "minimum contacts" sufficient for a court to exert personal jurisdiction over them. Here, placing the very substantial burden on Worldwide to litigate in the State of Texas when it has no meaningful contact with that forum is fundamentally unfair. None of Worldwide's activities give rise to any reasonable expectation that it could be sued in the state of Texas. Worldwide is a resident of Florida, and the burden on it far outweighs the burden on Heartbrand, when requiring the presence of the parties at discovery proceedings, motion hearings, and trial.

13

33. Second, Texas has little interest in adjudicating a dispute between parties that are not related through any contract or conduct. Worldwide is a Florida corporation that neither had contact with Heartbrand nor directed any conduct toward Heartbrand. Accordingly, the exercise of personal jurisdiction over Worldwide would violate due process.

34. Third, while Heartbrand clearly has an interest in obtaining relief, their interest can be satisfied by commencing litigation in an appropriate forum with jurisdiction over Worldwide. Specifically, Heartbrand can obtain relief in the Southern District of Florida, where Worldwide is a resident.

35. Fourth, exercise of personal jurisdiction over Worldwide in no way advances interest in efficiently resolving controversies and the furthering of substantial social policies. To the contrary, as demonstrated above, the exercise of personal jurisdiction by this Court over Worldwide would run afoul of the settled principles by which Texas and the many states determine in personam jurisdiction.

36. The court cannot exercise specific jurisdiction over Worldwide unless Worldwide's activities were "purposefully directed" toward Texas and this lawsuit resulted from alleged injuries that "arise out of" or "relate to" those activities. *Helicopteros,* 466 U.S. at 414 (1984); *Calder,* 465 U.S. at 788-89. The court does not have specific jurisdiction over Worldwide because Worldwide did not purposefully direct its activities to Texas and Heartbrand's causes of action did not arise from or relate to Worldwide's contacts with Texas. Rather, as stated above, Heartbrand's causes of action

arise from the fact that Worldwide merely owns the domain name www.akaushisteaks.com.

IV. IMPROPER VENUE

A. Argument

37. If an action is filed in an improper judicial district, the court may dismiss the action upon timely objection or, in the interest of justice, may transfer the case to a district where the action could have been brought. 28 U.S.C. §1406(a).

38. The court should dismiss this case because Heartbrand's claims did not occur in Texas. *See* 28 U.S.C. § 1391(a)(2); *Uffner v. La Reunion Francaise*, S.A., 244 F.3d 38, 42 (1st Cir. 2001); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Instead, as explained at length above, Heartbrand's causes of action arise from the fact that Worldwide owns a domain name that is accessible throughout the world, and from every jurisdiction in the United States, including the Southern District of Texas. Therefore, Worldwide's domain name is similar to a website in that it is "in a sense, a continuous presence everywhere in the world." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002). Accordingly, "a substantial part of the events or omission giving rise to the claim" did not occur in any particular judicial district, let alone the Southern District of Texas. Furthermore, nowhere in its complaint does Heartbrand assert that www.akaushisteaks.com was in fact accessed at any time by prospective purchasers of Heartbrand's products in the Southern District of Texas.

2385813.1

### B. Transfer in the Interest of Justice

39. Alternatively, the court should transfer this case to the Southern District of Florida. The court may transfer this case to the Southern District of Florida if (1) Worldwide is subject to the jurisdiction of the proposed forum, (2) venue is proper in the proposed forum, and (3) the transfer is in the interest of justice. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962).

40. Worldwide is subject to the jurisdiction of the proposed forum. Hillsboro Beach Florida is Worldwide's principle place of business. Hillsboro Beach is in the Southern District of Florida.

41. Venue is proper in the Southern District of Florida under 28 U.S.C § 1391(b)(3). Defendant Lobel's of New York, LLC is a resident of New York, but not of Florida, California or Texas. Defendants Yahoo! Inc. and Thought Convergence are residents of California, but not Florida, New York or Texas. Worldwide is a resident of the Southern District of Florida, but not of Texas, California or New York. Therefore, all defendants do not reside in one state. *See* 28 U.S.C § 1391(b)(1). Furthermore, as stated above, a substantial part of the events or omission giving rise to the claim did not occur in any particular judicial district. 28 U.S.C § 1391(b)(2). Therefore, venue is proper in a judicial district in which any defendant may be found. 28 U.S.C § 1391(b)(3). Worldwide may be found in the Southern District of Florida. Therefore, the Southern District of Florida is proper venue.

2385813.1

42. The transfer is in the interest of justice. *Goldlawr*, 369 U.S. at 467. Furthermore, the transfer would advance the timely disposition of the case on the merits without any further challenges to or appeal regarding jurisdiction or venue.

## V. CONCLUSION

43. There is no conceivable basis to support this Court's exercise of personal jurisdiction over Worldwide Media, Inc., a Florida corporation and resident, that has never applied for a license or registration to do business in Texas. The record is devoid of any evidence the Worldwide has "continuous and systematic" contacts with Texas, or that it has purposefully availed itself of the privilege of conducting business in Texas. Further, as there is no forum-related act upon which to base personal jurisdiction, it would violate notions of fair play and substantial justice to subject the Defendants to *in personam* jurisdiction in Texas. In light of Heartbrand's failure to allege sufficient minimum contacts to satisfy the 14th Amendment's Due Process Clause, the Court should grant Worldwide's Motion and dismiss the action for lack of personal jurisdiction.

44. In the alternative, there is no basis to support this Court as proper venue over this dispute because a substantial part of the events or omission giving rise to the claim did not occur in this judicial district and no defendant is from the State of Texas. Because Heartbrand filed suit in an improper district, the court should dismiss plaintiff's suit or, in the alternative, transfer it to the Southern District of Florida.

Respectfully submitted,

COX SMITH MATTHEWS, INC.
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (fax)

By: /s/ C. David Kinder
    C. David Kinder, Attorney-in-Charge
    State Bar No. 11432550
    dkinder@coxsmith.com
    Dan Harkins
    State Bar No. 09008990
    dharkins@coxsmith.com

Attorneys for Defendant,
Worldwide Media, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of October, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Ted D. Lee
Gunn & Lee, P.C.
700 North St. Mary's Street, #1500
San Antonio, Texas 78205
Counsel for Plaintiff


George A. Yuhas
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105
Counsel for Defendant Thought Convergence, Inc.

Annalyn G. Smith
Bracewell & Giuliani LLP
106 South St. Mary's Street, #800
San Antonio, Texas 78205

David S. Fleming, Lead Attorney
Brinks Hofer Gilson Lione
455 North Cityfront Plaza Dr., #3600
Chicago, Illinois 60611-5599
Counsel for Defendant Yahoo! Inc.

I certify that a true and correct copy of Worldwide Media, Inc.'s Memorandum in Support of Motion to Dismiss has been delivered to the following counsel of record on the 10th day of October, 2008:

| | |
|---|---|
| Randolph Wolfe<br>Foley & Lardner LLP<br>100 North Tampa Street, # 2700<br>Tampa, Florida 33602<br>Counsel for Defendant Worldwide Media, Inc. | *Via Facsimile #(813) 221-4210 and*<br>*Certified Mail, RRR* |
| Gregg S. Baker, Attorney-in-Charge<br>New York State Bar No. 2223196<br>Corrigan & Baker, LLC<br>1311 Mamaroneck Avenue, #215<br>White Plains, New York 10605<br>Counsel for Defendant Lobel's of New York, LLC | *Via Facsimile #(914) 468-0199 and*<br>*Certified Mail, RRR* |

/s/ C. David Kinder
C. David Kinder
Dan Harkins