UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HEARTBRAND BEEF, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:08-cv-00062 |
| | § | |
| LOBEL'S OF NEW YORK, LLC, | § | |
| WORLDWIDE MEDIA, INC. THOUGHT | § | |
| CONVERGENCE, INC. and YAHOO! INC. | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT
## LOBEL'S OF NEW YORK, LLC'S MOTION TO DISMISS

Plaintiff, Heartbrand Beef, Inc. ("Heartbrand") hereby files this "Plaintiff's Response to Defendant Lobel's of New York, LLC's Motion to Dismiss."[1] Defendant, Lobel's of New York, LLC ("Lobel's") is correct that this Court's inquiry regarding jurisdiction over Lobel's is governed by *Mink v. AAAA Development, LLC,*[2] and *Zippo Mfg. Co. v. Sippo Dot Com, Inc.*[3] However, Lobel's characterization that its activities through its website are insufficient to confer this Court's jurisdiction under those cases is woefully inaccurate. Under *Minka, Zippo,* and controlling Fifth Circuit case law discussed herein, Lobel's website is an interactive website, and Lobel's activities thereon are more than sufficient to confer general jurisdiction of the Court over Lobel's.

---

[1] This pleading is in response to "Motion by Defendant Lobel's of New York, LLC to Dismiss Under FRCP Rule 12(b) for Lack of Personal Jurisdiction, Improper Venue and/or Failure to Join a Required Party", Docket No. 31.
[2] 190 F.3d 333 (5th Cir. 1999).
[3] 952 F.Supp. 1119 (W.D. Pa. 1997)

1

## I. Facts

***A.  Lobel's of New York, LLC and Lobel's of New York, LLC are both proper parties to this litigation.***

In Lobel's Motion to Dismiss, a considerable amount of effort is spent to distinguish the party currently named in this lawsuit, Lobel's of New York, LLC (organized in New York) from Lobel's of New York, LLC (organized in Delaware)("Lobel's – Delaware"). Lobel's alleges that Lobel's – Delaware owns and operates the website www.lobels.com, and is the proper party to be named in this lawsuit instead of Lobel's. Beef products are sold through the website www.lobels.com. While Lobel's – Delaware may own and operate the website, Heartbrand believes that the products that are actually sold thereon and shipped to customers are Lobel's products. Thus, both Lobel's and Lobel's – Delaware are actively involved in the selling of products through www.lobels.com. Therefore, both Lobel's and Lobel's –Delaware appear to be necessary and proper parties to this litigation.

Accordingly, simultaneously herewith, Heartbrand has filed a "Motion for Leave to File Second Amended Complaint." The Second Amended Complaint names both Lobel's and Lobel's – Delaware as parties. Heartbrand asks that the Court allow Heartbrand to name both Lobel's and Lobel's – Delaware, at least until discovery can be taken to establish each entity's role and activities related to www.lobels.com. By amending the Complaint to name Lobel's – Delaware, Heartbrand has named all necessary parties, and therefore, Lobel's Motion to Dismiss as it pertains to failure to join a necessary party under Federal Rule of Civil Procedure 19 should be denied.

***B.  Ordering products on www.lobels.com requires substantial interactivity by a customer.***

As a preliminary matter, Lobel's argues that neither Lobel's nor Lobel's – Delaware is subject to the jurisdiction of this Court. Therefore, this Response is intended to encompass both

2

Lobel's and Lobel's – Delaware inasmuch as Heartbrand believes both are actively involved in sales of products through www.lobels.com. To support Lobel's argument that this Court does not have jurisdiction over either entity, Lobel's argues that the activities conducted on the website www.lobels.com are insufficient to establish personal jurisdiction, and that Lobel's allegedly *de minimis* sales to Texas residents through the website are likewise insufficient to confer jurisdiction. However, even a cursory review of www.lobels.com reveals that there is a high level of interactivity between a customer visiting the website and Lobel's/Lobel's – Delaware. Moreover, the sales to Texas residents through the website are more than sufficient to confer this Court's jurisdiction.

Attached hereto as Exhibit A is a true and correct copy of the "Frequently Asked Questions" or "FAQ" section of the website www.lobels.com. Under the question "How do I place an order online?" the following excerpt appears:

> To begin shopping, click the Shopping button at the top of any screen. There you will find a menu of our different product lines at the left-hand side of the screen.
>
> Select the product line you are interested in (such as USDA Prime Beef). Then select the cut you are looking for (such as Boneless Strip Steaks).
>
> Enter the quantity next to the package(s) you'd like to purchase, then click the "Add To My Order" button. Follow the on-screen instructions to either continue shopping or complete your order by continuing to your Order Summary.[4]

In shopping for beef on www.lobels.com through "The Butcher Shop" page, a customer is first asked to select from almost twenty different categories of products, including beef products, lamb, pork, veal, hot dogs, sausage, poultry, the "Lobel's Gift Shop", "Lobel's Merchandise" and others. Once a type of meat or category of products is selected by the customer, various cuts of meat or products are displayed for the category selected. Clicking on each cut or product

---

[4] Exhibit A.

leads to a page where information on the cut of meat or product is given, including a point of sale pricelist where a customer can select the quantity and elect to "Add To My Order."

Once a cut of meat or product is added to a customer's order, the customer has the option to "Return to Shopping" or "View Order Summary". When a customer is finished shopping and clicks "View Order Summary," two options appear for the customer. If the customer is a "Returning Web Customer" the customer must enter his or her email address, and may enter his or her password which he or she previously created on the website. Likewise, a "New Web Customer" must enter his or her email address and may create a password on the website. Lobel's discloses that the email address is necessary to set up the customer account for that particular customer and send order confirmation. The customer must then "Sign In Using Our Secure Server."

Screenshots of the web pages from www.lobels.com outlining the procedure a customer must go through to purchase products from Lobel's as described hereinabove are attached hereto as Exhibit B. However, the Court is encouraged to visit www.lobels.com to experience first hand the interactivity that a customer must have with the website just to order products from Lobel's. Despite this extremely high level of interactivity, Lobel's argues that the "internet activity is insufficient to establish personal jurisdiction in Texas..."[5] Yet, Lobel's admits in its Motion to Dismiss that products have been sold to Texas residents through its interactive website.[6] As discussed herein below, such sales through www.lobels.com are more than sufficient to confer this Court's jurisdiction over Lobel's and Lobel's – Delaware.

---

[5] Docket No. 31, pg. 4.
[6] *Id.*, Exh. A thereto.

## II. Authority and Argument

### A. *Legal Standard.*

A federal court may exercise personal jurisdiction only to the extent that it is permitted by the state long arm statute if exercising jurisdiction does not violate due process guaranteed by the Fourteenth Amendment of the United States Constitution.[7] In order to exercise jurisdiction over Defendant in Texas, the Court "can use a state long-arm statute only to reach those parties whom a court of the state could also reach."[8] Under the Texas long arm statute, a nonresident may be subject to personal jurisdiction if the nonresident commits "acts constituting doing business" in Texas.[9] This requirement is interpreted broadly as spanning to the limits of due process under the United States Constitution.[10]

Exercise of personal jurisdiction over a nonresident defendant satisfies due process when two requirements are met. First, the nonresident defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state.[11] The minimum contacts prong is divided into two separate analyses: contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction.[12] Exercise of specific jurisdiction is appropriate when the nonresident's contacts with the forum state arise from or are directly related to the cause of action.[13] Exercise of general jurisdiction is appropriate where the nonresident's contacts with the forum state are not related to the plaintiff's cause of action, but

---

[7] *LCW Automotive Corp. v. Restivo Enterprises,* No. SA-04-CA-0361-XR, 2004 WL 2203440, *1-2 (W.D. Tex. Sept 24, 2004)(citing *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997)).
[8] *Id.* (citing *Burstein v. State Bar of California,* 693 F.2d 511, 514 (5th Cir.1982)).
[9] *Id.* (citing TEX. CIV. PRAC. & REM.CODE §§ 17.041-.045).
[10] *Id.* (citing *Gundle Lining Const. v. Adams County Asphalt,* 85 F.3d 201, 204 (5th Cir.1996); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)).
[11] *Id.* (citing *Marathon Oil Co. v. A.G. Ruhrgas,* 182 F.3d 291, 294 (5th Cir.2001)).
[12] *Id.*
[13] *Id.*

are continuous and systematic.[14] Second, exercising jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice.[15]

As Lobel's correctly points out, the Fifth Circuit has established a standard for assessing personal jurisdiction in internet cases. Specifically, in *Mink v. AAAA Development LLC*, the Fifth Circuit adopted the "sliding scale" test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*[16] Texas district courts have interpreted *Mink'* s adoption of *Zippo* to apply in both general jurisdiction and specific jurisdiction cases.[17] *Zippo* requires a court to look to the "nature and quality of commercial activity that an entity conducts over the Internet."[18]

The level of activity conducted may be classified into three categories. On one outer limit is the first category, which consists of situations where a defendant does business over the internet by entering into contracts with residents of other states by knowingly and repeatedly transmitting computer files over the internet.[19] Jurisdiction is proper in these situations. On the other outer limit is the third category, which consists of situations where a defendant has merely posted information on an internet website which is accessible to out of state users.[20] Jurisdiction is not proper in these situations. In between these limits is the second category. This category consists of situations where a defendant has a website that allows a user to exchange information with a host computer.[21] Jurisdiction is determined in these types of cases by looking at "the level of interactivity and commercial nature of the exchange of information that occurs on the

---

[14] *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).
[15] *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).
[16] *Mink*, 190 F.3d 333, 336 (5th Cir.1999) (citing *Zippo*, 952 F.Supp. 1119 (W.D.Pa.1997)).
[17] *LCW Automotive*, 2004 WL 2004 WL 2203440 at *2.
[18] *Zippo*, 952 F.Supp. at 1124.
[19] *Id.*
[20] *Id.*
[21] *Id.*

6

[website]."[22] The more interactive and commercial the website is, the more likely it is that a court will find that the minimum contacts requirement is met.[23]

**B.     Lobel's website is almost exclusively a commercial website for the sale of meat products.**

When the Court applies the sliding scale to www.lobels.com, the only logical conclusion the Court can reach is that Lobel's website is primarily a commercial website for the sale of meat products that is highly interactive with the customer. Lobel's advertises in the "FAQ" section of its website that "Lobel's... is a direct-to-consumer business only. You can only buy our products directly from us.....*You can place an order either from our online butcher shop or by calling our toll-free customer service line...*"[24] Thus, one of only two possible ways which a consumer may obtain Lobel's products is through its website.

Furthermore, when ordering products from Lobel's website, a customer must (a) select a category of products, (b) then select the products themselves, (c) then order a quantity of products (d) then view their "shopping cart" or order summary, and (e) enter at least an email address, and possibly a password in order to view their customer account. After performing all of these steps, only then is the customer directed to Lobel's "secure server" to complete the transaction, which presumably requires the customer to select a form of payment, and enter payment information, such as credit card numbers, etc. Moreover, if a customer is having problems or difficulty on the website, they can go to the customer service page on Lobel's website, where they have the option to "chat" online with a customer support representative.[25]

Despite this high level of interactivity on www.lobels.com, Lobel's would have this Court believe that its "internet activity is insufficient to establish personal jurisdiction in

---

[22] *Id.*
[23] *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F.Supp.2d 820, 825 (N.D.Tex.2002).
[24] Exhibit A. [Emphasis added].
[25] Exhibit C.

7

Texas..."[26] In so arguing, Lobel's relies heavily on two cases which are factually irrelevant to this case. *Revell v. Lidov* involved a defamation action where a professor authored an article and posted it on an internet bulletin board hosted by a university.[27] The Fifth Circuit upheld the finding of a lack of jurisdiction because, *inter alia,* the article made no reference to Texas or activities of the defendant in Texas.[28] The website in question did not involve high commercial activity, and did not offer to sell defendant's products, but rather only a few subscriptions were sold through the website.

More disturbing is Lobel's reliance on this Court's decision in *Optimal Beverage Company v. United Brands Company.*[29] This Court's decision in that case is highly distinguishable from this case for two reasons. First, one of the two websites at issue did not offer any products for sale. Second, while the other website offered products for sale, there was no evidence of any sales in Texas. Here, Lobel's website is primarily a product-purchase website and Lobel's admits that as much as 5% of its sales through the website are directed to Texas residents.[30]

Contrary to Lobel's case law, *Carrot Bunch Co., Inc. v. Computer Friends, Inc*[31] is directly on point with this case. In that case, the defendant argued against jurisdiction, and the Court applied the sliding scale approach announced in *Zippo.*[32] The Court discussed at length two similar cases, *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.,*[33] and *People Solutions, Inc. v. People Solutions, Inc.*[34] In *American Eyewear, Inc.,* the Court found

---

[26] Docket No. 31, pg. 4.
[27] 317 F.3d 467 (5th Cir. 2002).
[28] *Id.* at 473
[29] H-06-cv-1386.
[30] Docket No. 31, Exhibit A thereto.
[31] 218 F.Supp.2d 820 (N.D. Tex. 2002)
[32] *Id.* at 824-25.
[33] 106 F.Supp.2d 895 (N.D. Tex. 2000).
[34] 2000 WL 1030619 (N.D. Tex. July 25, 2000)

8

that jurisdiction existed (a) where the defendant used its website to enter into contracts with Texas residents, (b) where customers interacted with the website by submitting product order forms and by using the website's e-mail option to submit requests to the defendant's customer service department, and (c) where the defendant shipped goods ordered through its website to Texas.[35] In *People Solutions*, the Court found that jurisdiction did not exist on similar facts where there was no evidence of actual sales to Texas residents.[36]

In holding that the defendant's website activity was sufficient to confer jurisdiction, the *Carrot Bunch* Court noted:

> "Carrots Inks' website operates similarly to the interactive website discussed in *American Eyewear*, where this Court found jurisdiction to be appropriate. In *American Eyewear*, this Court noted the following characteristics of the defendant's website: (1) anyone with Internet access could connect to the website and make purchases; (2) customers could browse interactively in search for particular products; (3) customers could purchase defendant's products by completing order forms with shipping address and credit card information; (4) the form is electronically submitted over the Internet, and the product is packaged and shipped to the customer; (5) an e-mail message confirming the purchase was sent to the customer."[37]

The description of the characteristics of the websites in *American Eyewear* and *Carrot Bunch* exactly describe the characteristics of Lobel's website, as discussed hereinabove. The only logical conclusion is that Lobel's website is a highly interactive website and Lobel's activities thereon are sufficient to confer *at least* general jurisdiction over Lobel's and Lobel's – Delaware. To the extent that any of the 5% of sales that occurred in Texas resulted from the click throughs using the term "Akaushi" as complained of in the Amended Complaint, specific jurisdiction may also exist. However, discovery will have to be conducted to find out.

---

[35] *Carrot Bunch Co., Inc.* 218 F.Supp.2d at 825 (citations omitted).
[36] *Id.* at 825-26 (citations omitted).
[37] *Id. See also, Global 360, Inc. v. Spittin' Image Software, Inc.*, No.Civ.A.3:04-CV-1857-L, 2005 WL 625493 at *5 (N.D. Tex. March 17, 2005) *See also, James Avery Craftsman, Inc. v. Lugosch*, 486 F.Supp.2d 595, 598 (W.D. Tex. 2007)(jurisdiction not found on the basis that "[c]ustomers may not purchase items directly through the websites.")

## C. Lobel's "de minimis Texas sales" argument is contrary to the law.

Importantly, Lobel's admits that sales of Lobel's products through www.lobels.com have been made to Texas residents. Specifically, Lobel's has testified that as much as 5% of its internet sales in the last twelve months have been directed to Texas residents.[38] Yet, Lobel's argues that jurisdiction does not exist because "only a negligible percentage of its product sales has ever been made to Texas customers."[39] Unfortunately for Lobel's, this "*de minimis* Texas sales" defense has no merit.

This same argument was made and rejected by the Court in *Global 360, Inc. v. Spittin' Image Software, Inc.* In that case, the Court stated:

> "The court rejects ImageMAKER's argument that personal jurisdiction is lacking because of the *de minimus* nature of its Internet website sales to Texas consumers. **The total amount of sales is not the critical inquiry**. Rather, the critical determination is the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F.Supp. at 1124; *see also Mink*, 190 F.3d at 336. *See generally American Eyewear*, 106 F.Supp.2d at 901 (purposeful availment found where Internet sales to Texas residents constituted fewer than 1/2 % of defendant's total sales); *Stomp*, 61 F.Supp.2d at 1078 (purposeful availment found where evidence showed only two (2) sales made over the Internet to consumers in forum state); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir.1996) (rejecting district court's decision to dismiss case for lack of personal jurisdiction, in part because of district court's misplaced "reliance on the *de minimus* amount of software sales" by nonresident defendant into forum state)."[40]

Accordingly, Lobel's *de minimis* Texas sales argument is inapposite to the issue of this Court's jurisdiction, and must be completely ignored.

For the reasons stated herein, the Court clearly has at least general jurisdiction over Lobel's and Lobel's – Delaware. Therefore the Court should deny Lobel's Motion to Dismiss. While Heartbrand is confident that Lobel's and Lobel's – Delaware's website activities are more than sufficient to confer this Court's jurisdiction, alternatively, if the Court is inclined to grant

---

[38] Docket No. 31, Exh. A thereto.
[39] Docket No. 31, pg. 6.
[40] 2005 WL 625493 at *6. [Emphasis added].

Lobel's Motion, the Court should refrain from doing so until discovery on the issue of jurisdiction can take place. In the further alternative, if the Court is inclined not to allow discovery to take place on the issue of jurisdiction, the Court should transfer the case to the Southern District of New York rather than dismiss the lawsuit.

**D.     *Venue is proper.***

Lobel's also argues that venue is improper under 28 U.S.C. § 1391. Lobel's is incorrect. 28 U.S.C. § 1391(b)(2) provides that jurisdiction is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, *or a substantial part of the property that is the subject of the action is situated.*"[41] As alleged in the Amended Complaint, Heartbrand has complained of Lobel's and the other defendants' activities in setting up the website www.akaushisteaks.com and using the word "Akaushi" thereon to click through to Lobel's website, www.lobels.com, where Lobel's then sells non-Akaushi meat products.[42] The property at issue is the Akaushi beef and the Akaushi cattle owned by Heartbrand.

All of the Akaushi cattle and all of the Akaushi beef that has not been shipped by Heartbrand to Heartbrand's customers are located at Heartbrand's headquarters in Yoakum, Texas, which is within this District.[43] Accordingly, a substantial part of the property that is the subject of this action is located in this District. Therefore, pursuant to 28 U.S.C. §1391(b), venue is proper in the Southern District of Texas.

**E.     *Dismissal for failure to join a necessary proper should be denied.***

As previously stated, simultaneously herewith, Heartbrand has filed a "Motion for Leave to File Second Amended Complaint" to name both Lobel's and Lobel's – Delaware as parties. Heartbrand believes both parties are proper parties in this lawsuit inasmuch as both parties are

---

[41] 28 U.S.C. § 1391(b)(2). [Emphasis added].
[42] Docket No. 3.
[43] "Declaration of Ronald Beeman", attached hereto as Exhibit D.

11

utilizing www.lobels.com to sell Lobel's products. Heartbrand has named all necessary parties in the Second Amended Complaint, and therefore, Lobel's Motion to Dismiss as it pertains to failure to join a necessary party under Federal Rule of Civil Procedure 19 should be denied.

### III. Conclusion and Prayer

For the reasons stated herein, this Court clearly has jurisdiction over Lobel's and Lobel's – Delaware, venue is proper in this district, and Heartbrand has moved to file a Second Amended Complaint so that all necessary parties are joined. Therefore, "Motion by Defendant Lobel's of New York, LLC to Dismiss Under FRCP Rule 12(b) for Lack of Personal Jurisdiction, Improper Venue and/or Failure to Join a Required Party" should be denied. Alternatively, if the Court is inclined to grant Lobel's Motion, the Court should refrain from doing so until discovery on the issue of jurisdiction can take place. In the further alternative, if the Court is inclined not to allow discovery to take place on the issue of jurisdiction, the Court should transfer the case to the Southern District of New York rather than dismiss the lawsuit.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Heartbrand Beef, Inc. prays that this Court deny "Motion by Defendant Lobel's of New York, LLC to Dismiss Under FRCP Rule 12(b) for Lack of Personal Jurisdiction, Improper Venue and/or Failure to Join a Required Party", and grant Plaintiff any further relief, at law or in equity, as the Court deems just an proper.

Respectfully submitted,

GUNN & LEE, P.C.
700 North St. Mary's St., Suite 1500
San Antonio, Texas 78205
(210) 886-9500 Telephone
(210) 886-9883 Facsimile


By: /s/ Ted D. Lee
    Ted D. Lee
    State Bar No. 12137700

# CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

C. David Kinder
Cox Smith Matthews Incorporated
112 E. Pecan Street, Suite 1800
San Antonio, TX 78205
**Defendant Worldwide Media, Inc.**

Gregg S. Baker
Corrigan & Baker LLC
1311 Mamaroneck Ave. Suite 215
White Plains, NY 10605
**Defendant Lobel's of New York, LLC**

George A. Yuhas
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
**Defendant Thought Convergence, Inc.**

Annalyn G. Smith
Bracewell & Giuliani, LLP
106 S. St. Mary's Street, Suite 800
San Antonio, TX 78205
**Defendant Yahoo! Inc.**

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

David S. Fleming
Howard S. Michael
Brinks Hofer Gilson & Lione
455 N. City Front Plz. Dr.
Chicago, IL 60611
**Defendant Yahoo! Inc.**

By: /s/ Ted D. Lee
Ted D. Lee

14